The next case is number 1351-16, American Contractors Indemnity Company v. United States. Mr. Slagle. Good morning. My name is Jeff Slagle. I'm the attorney for American Contractors Indemnity Company, sometimes also known as ACIC. ACIC issues contract surety bonds. The Small Business Administration sometimes, amongst other things, issues guarantees in the forms of contractual agreements with surety companies, whereby the SBA assumes some of the risk associated with issuing bonds for small contractors seeking to progress into a higher realm of business. The SBA made an agreement with ACIC in connection with a particular bond and a particular contractor through the surety bond guarantee program. A dispute has arisen between ACIC and the SBA in connection with that surety bond guarantee. That dispute is essentially contractual. There is no argument by the SBA that I'm aware of that any conduct alleged or undertaken by ACIC was inconsistent with or undermined the overall purpose and function of the SBA surety bond guarantee program. Instead, years after ACIC undertook a risk it would not have undertaken in the absence of this program, and after ACIC performed its obligations under its bond by making a settlement of a claim against that bond, the SBA reneged on its undertaking, its agreement with ACIC to assume part of that risk. It's fair to say that the refusal of the SBA to perform was based on a technicality. That's because there was no substantive harm to the SBA even from the alleged error of ACIC. This is just like one of the things that I caught my eye. Accepting the government's position that they didn't have a notice at the appropriate time and therefore that the amendment didn't come to effect, what happened to the original bond? Was that deemed canceled and of no effect, or would that have remained in effect if the amendment was improperly instituted? Well, if I follow your Honor's question, there's the issue of what happened to the bond itself. The bond is a commitment by ACIC, the bonding company, to an obligee. I'm trying to understand what happened to the SBA's obligation on the original bond. Obviously your company performed on the bond. Yes, Your Honor. The SBA's position, and we don't necessarily take issue with the notion that there was only one bond. Is their position that everything was voided when the amount was increased without prior approval? That's correct, Your Honor. And this relates to my point that this is essentially a contractual relationship between ACIC and the SBA with respect to this guarantee. Is that, according to the SBA's position, the alleged failure by ACIC to have a proper sequencing of the modification of the bond and the approval of the modification results in a complete forfeiture by ACIC of its rights under the original guarantee? I don't understand you to be arguing that the original bond should not be forfeited, even if assuming there is a violation of the regulation. Your Honor said the original bond should not be forfeited. We're talking about ACIC's… The SBA obligation under the original bond. Right. And our position is that the SBA has acted wrongfully and mistakenly. Well, I understand, but let's assume that, take a different case, and hypothetically, if the SBA had, you had gone ahead and agreed to an enforceable increase obligation without getting SBA approval, would that result in a forfeiture of the entire amount of the obligation? That is, in fact, the SBA's position in this case. You don't disagree with that, right? I certainly didn't see anything in your brief that took issue with that. effective right now or this month to that provision, which establishes that the SBA has discretion upon the failure of any of the enumerated elements of that regulation to work a reduction of its obligation in whole or in part. And that somewhat goes to your… I share Judge Bryson's impression. I didn't see that argument, that if the SBA declined to accept the modification because they were not notified in a timely way or things went too fast, that the prior obligation stayed in effect. I didn't see that argument. It seems as if, since you said that the liability was within the scope of the initial bond anyway, so that the increase is immaterial. Right. Well, Your Honor, first of all, I think there's a change in the regulation, which is occurring… A retroactive change? Honestly, Your Honor, I just realized this change was pending. I have not been tracking this regulation to realize that there was a pending change. And I don't know the answer to that question. I mean, the question is, is that position before us? It seems, in retrospect, now that all this has passed, that that would be a favorable position for your client, but I don't see it presented to us. It was not one that we realized was available to us. I was not aware of this. The prior language does not suggest discretionary action on the part of the SBA or the possibility of a reduction by the SBA of its liability, in part, rather than in whole. It's not a reduction, just a continuation of the existing liability. Quite right, Your Honor, which seems… If they don't accept the change. Quite right, Your Honor. The regulation we were dealing with suggested, and this was a position taken by the SBA, a forfeiture. We, of course, have contested the interpretation of the regulation by the SBA, looking primarily to the meaning of the language concerning what the condition… We're talking about the condition that there has to be a particular sequence. But you haven't appealed that interpretation. Isn't that right? That's correct. Well, the interpretation, to the extent that the regulation appeared to be an all or nothing… The regulation appeared to be a simple condition subsequent. In other words, if the regulation were part of the contract, the guarantee agreement, it imposed a condition subsequent that changes to the bond had to be sequenced with approval by the SBA so that the approval preceded the change or the increase in the amount of the bond. And the failure of that sequence would be a failure of a condition subsequent, which would work a forfeiture of the bond guarantee and did not suggest discretion or that it would simply relate to the approval. Also relevant on this point is that the SBA did approve the change. We're not talking about whether the SBA wants to unwrap the approval of the increase in the bond amount. That wouldn't have any substantive consequence to ACIC whatsoever because, as you pointed out, the settlement and the loss on the bond was considerably less than the original amount of the bond, not the increased amount of the bond. Suppose that we were to agree with you that the language of the regulation requires that the obligation of the surety be enforceable. Yes, Your Honor. And you make an argument that this obligation was not enforceable in part based on the lack of a sufficient power of attorney to Mr. Zwart. Now, that is part of your argument. Well, the lack of a power of attorney for the bond modification. He didn't have the power of attorney up to the range that the bond was increased in, right? Your Honor, in the surety industry, there are two functions of power of attorney involved in this matter. Let me clarify. The SBA, through its procedures, requires that when you apply for a bond guarantee, they want a power of attorney for that particular agent showing a power up to at least the amount of the requested bond. The surety industry complies with the SBA's requirement without necessarily knowing why they're doing that. In the surety industry dealing with contractors and owners and obligees on bonds, there is a specific power of attorney for any act by the agent to bind the surety. Because the agent has no blanket power. I understand that. Yes. But I was really trying to get to the next part of my question. I'm sorry, Your Honor. Why, assuming that – accepting your argument that the power of attorney here was not sufficient at the time that the increase was approved. Well, I would say there was no power of attorney, Your Honor. That's why I'm – That's fine. Yes, Your Honor. I will take it as there was no power of attorney. Yes, Your Honor. Why doesn't the acceptance of the premium check way back in March of 2002 – 2003. 2003. Yes, 2003. Why doesn't that constitute a ratification that makes the obligation enforceable? Well, there are three reasons, Your Honor. First of all, you have to ratify the – well, let me do a different sequence. First of all, our position, and it's supported in the record, is that an increase in the amount of the contract, even without an increase in the amount of the bond, entitles the bonding company to an increase in the premium. The second position is that the premium is – But there was an increase in the amount of the bond in this case. Right? We expect to prove – Yes or no question. Well, we don't believe an original bond rider was ever delivered to anyone. Well, I know. But there was an increase. You think the increase was not supported by either the delivery of an original of the bond or by the power of attorney. But there's a number, which is a larger number, on the new bond, correct? There was an increase. There is a document drawn up titled Bond Rider, which references an increased amount of that bond. Right. It's not clear – and bear in mind, Your Honor, that that was done in – that the change in the contract was in 2003. That document was created in 2003. No issue arose concerning that document until several years later. Okay, okay. But I really do want to get an answer to my question of why the acceptance of that check did not constitute a ratification, notwithstanding any flaws in either the power of attorney or the actual delivery of the original signed book copy of the obligation. The third reason is that the premium is paid in anticipation of the issuance of the bond. For one thing, the fee has to be paid to the SBA prior to the SBA's approval. So you've got to pay with your application. Right. The delivery of the check is therefore not – and the acceptance of a check is therefore not a ratification of any act. It's part of the processing of an application for the bond, or in this case – And I assume the check was cashed? Yes, Your Honor. Eventually. Yeah. Okay. Do you know when it was cashed? I don't. Most checks get cashed by companies pretty quickly in my impression. It was received – there was some considerable back and forth about the allocation between the SBA fee, the agent's commission, and increased premium. But sometime in 2003? Yes, Your Honor. Yeah, okay, it was cashed. Okay. Thank you, Mr. Slagle. Mr. Olsen? May it please the Court. ACIC, in contravention of the regulation at issue, agreed or acquiesced to a meritorial change in the bond prior to obtaining SBA's approval. Mr. Olsen, SBA, since you used the terms agreed to and acquiesced to, it seems to me that SBA has agreed to and acquiesced in the process that occurred here by agreeing ultimately in June of 2004 to the increase, hasn't it? Why hasn't it waived any objection to the process that led to that point? The simple fact is that SBA was unaware of the surety rider's existence at that time. At the time that they agreed to the increase? On June 2nd, 2004, the SBA was not aware that the surety rider itself was in existence. That's not what the record says. If that was when they agreed, isn't the government's position that that was too late? Not that they didn't know what they were doing? Your Honor, yes, but I'd like to separate exactly what is at issue. On June 2nd, 2004, the SBA approved on an amended form 990 an increase to their bonded amount that they would agree to. That was before the default? That was before the default by the contractor, yes, Your Honor. But prior to that, 15 months prior to that, in March of 2003, ACIC via the surety rider stated that they agreed to a change and an increase in the premium. Yes, I think it's not disputed that the prior approval hadn't been obtained. But this is really very strange. And if indeed, as your friend says, this regulation has been clarified, because it seems to me it would be impossible, punitively inconceivable, for the SBA to be entirely liberated from all obligation, even including the prior obligation, because of this event which was imperfectly carried out. Your Honor, I understand your reluctance in terms of what happened. But when we look at the underlying statute, not the regulation, the statute, and that is 15 U.S.C. section 694B. That section states that if there is a prior approval surety, which in this case ACIC is a prior approval surety, who agrees or acquiesce to a material alteration of the bond, and is later clarified as increasing the bond amount by 25% or $50,000, then the SBA shall be relieved of all liability. All liability. And that is under the first bond, on the original bonded amount, as well as the second amount. That's a harsh result. The SBA accepted the additional premium. They accepted it only because they did not know all of the facts. You say whatever money you choose to put in our hands, thank you very much? No, Your Honor. I guess in terms of there are a couple of factors at play. One, an increase in a bonded amount is an unusual occurrence. It doesn't happen every day. But when you look at what the SBA did, they were unaware that the change had already occurred. So that if you go back to the March 31st surety rider, and I will keep coming back to it, but that's an important document. Because in that document it says that the ACIC agrees to the change or approves the change subject to a written change order. In essence, they put a condition in that rider. If, as ACIC says, it was aware all the time that it had to get SBA's approval prior to their agreeing to the change, then why didn't they subject that surety rider to the condition preceding that it was subject to SBA's approval? Now it's clear, at least we're told that it's clear, that mistakes may have been made along the way. But what I am having trouble with is how the government, the SBA, having eventually approved it before the default, having accepted the premium for the increase, is off the hook not only for the increase, but for the prior amount. Yes, Your Honor. Which they did agree and which was properly, according to these rules, implemented. Yes, Your Honor. Set aside for the moment the proposed change or actual change now. At the time, between June of 2004 and May of 2007, when the SBA definitively denied all liability, at that time, the statute says that the government would be relieved of all liability. Where does the statute say that? I have it right here. What exactly are you representing that the statute says? Be precise, because I think what you said before isn't consistent with the statute. So please be precise about what you think the statute says. Your Honor, I don't have the language in front of me. As I recall what the language says, something to the effect that the SBA shall be relieved of all liability. When? In what circumstances? When the prior approval surety... No, actually it says nothing about that. It says the SBA, the administration, shall be relieved of liability in whole or in part, within the discretion of the SBA, if, and it never says anything about pre-approval anywhere in the statute, the only thing I think you could even be suggesting is what justifies what you're saying, is number four, which says, if the surety has substantially violated the regulations promulgated by the administration. That's the only thing. It says nothing anywhere in this statute about pre-approval or any of that language that you said. Nothing. So unless I'm on... Because you told me to look through 15 U.S.C. 694B, paren E, right? Yes, Your Honor. Language pre-approval is not in there anywhere. None of what you said is in there. So tell me what am I missing? Your Honor, when I stated earlier, it was based upon my recollection of what the statute... It doesn't say that anywhere in it. So that's not an answer to my question. But if you track the statute in conjunction with the regulation, reading those two together, then the SBA is relieved of all liability. And when you talk about the notion of discretion, then you look at discretion, and if the agency exercised its discretion in terms of relieving itself of all liability, then the question becomes, is that discretion reasonable? And when you look at the facts of this case, if discretion was before the agency, then it was reasonable then for the agency to act as they did. We start with in March 31st of 2003, ACIC agreed to a premium increase. After that, and on that document, it was signed by an agent of ACIC, and he signed as their attorney in fact. Then we have Mr. Beeler, who is the bank official in charge of administering the loan on behalf of OmniBank, and I'll add that OmniBank was a dual obligee in this case. And he testified, wrote a statement, an affidavit, stating that he would not have approved the first draw unless he had been shown a copy of the surety rider increasing the bond. He requested the increase for Mr. Zort and Mr. Zort's capacity as ACI's representative. At no point has ACI backed away from Mr. Zort's actions. They say that, oh, well, he did those things, but he did so without authority. Okay, but I guess that's sort of beside the point. I understand that's one of their arguments, but that wasn't the one I was trying to get you to focus on. What I was trying to get you to focus on, because you said we have to look at whether it was reasonable for the agency to refuse liability in whole, because they have the discretion to do it in whole or in part, and I was hoping that you would tell me why it's reasonable for them to refuse liability in part in a circumstance where preapproval absolutely wasn't sought, but nonetheless was ultimately granted. When there was no liability or change in circumstances between that time, because I understood your argument to Judge Bryson when he asked, well, what do we make of the fact that actually the SBA ultimately granted the increase in the bond amount, and I didn't really, your answer was the SBA was unaware that the surety rider already existed, and I guess my question is, so what? No liability attached beforehand. You would have a very good basis if not only had they already agreed, but there were already liability, right? But here, what difference does the knowledge make? How does it harm or affect SBA? Your Honor, that question is one of what happened in the actual world in terms of what did the SBA do. So at the time that the SBA approved that loan, they were unaware that prior to that, they were on the hook for the increased amount. No, but they weren't on the hook for the increased amount. There's no law anywhere that would have put them on the hook for the increased amount prior to their approval. So what difference does it make if they weren't aware of the fact that the contractor subjected itself to a higher potential liability? SBA was not on the hook to cover it. There's nothing anywhere that suggests they were. But what difference does SBA make? What difference does it make to SBA? How are they harmed? When we look at the issue between the statute and the regulation, where the regulation states that if there is a material alteration in the bond, then the SBA is relieved of all liability. And you read that in conjunction with the statute and the regulation. So when you talk about the harm. The statute doesn't say that. Maybe you mean the regulation. I've got the statute here. Yes, Your Honor. And I will admit that I'm probably confusing the two. And the focus of the statute had not been the focus of the argument below. So if I misstated the statute, I was wrong and I apologize. But the bottom line is that as of March 31, 2003, if the obligees had made a demand on the bond, then the amount that they would have made the demand on would have been the increased premium of $2 million, a little over $2 million. Why they tell us that the actual amount of actual liability was within the scope of the original bond. So how do we know that they would have made a larger demand, at which point the SBA would have said, we haven't approved this larger amount. Our liability is limited to what we approved. Your Honor, when we say that they would have made a bigger demand, the only reason why. You told me that this was your position, that they made a bigger demand. Your Honor, I may have misspoken. What we have is that ultimately ACIC settled the case for an amount that was under the original bonded amount. That's a fact. But the only reason why the increased bonded amount did not come into play was because of the settlement. So why isn't the SBA bound to the original amount to which they agreed? Because the statute doesn't preclude them. It could very well be that the regulation, which your friend says has now been changed, was recognized as, on its face, flawed. I have the reg in front of me. The new one? Yeah. That's the beauty of the computer and the law clerks. The new reg, and it doesn't, unfortunately, help the appellant. Quite frankly, it limits itself to the time period for bonds executed between February 17, 2009, and October 1, 2010. So it's not retroactive. Yeah. It's not. It doesn't help. It may indicate that the inconsistency between the regulation and the statute had been recognized by enough people to eventually lead to an express change in the regulation. But it seems to me that what's being requested, setting aside that it's been remedied as of now, seems to go beyond a reasonable interpretation of the statute. Your Honor, when you look at what the SBA did, the SBA focused on their regulation. That regulation is a byproduct, if you will, of the statute. But when you look at the regulation, the regulation is clear that if there is a material alteration, which in this case occurred because the bond was increased by more than 25% and more than $50,000, then the SBA is relieved of all liability. And that is the regulation that the SBA used at the time. And that is what drove Mr. Lalamere, the director of the SBA Small Business Set-Aside Program, to deny the liability. And I'm going back to that March 31. OK. You need to wrap it up, Mr. Austin. We're over time. Yes, Your Honor. Your Honor, simply, ACIC agreed or acquiesced to a material change without prior SBA approval. Therefore, the SBA is relieved of all liability. OK. Thank you, Mr. Austin. I have seconds. Judge Moore, based on what I printed out from Weston, I believe the language you were looking at just a moment ago is indicated as text of the introductory paragraph effective until February 12, 2014. That's the text that talks about bonds executed on or after February 17, 2009, and so on. I have a printout that shows text of introductory paragraph effective February 12, 2014, which doesn't have that language  within its discretion, if any of the circumstances exist. Yeah, but here they say, we're not exercising discretion to do part. We think whole. So A, I don't see that it saves you. The fact that they could have agreed to do only a partial thing doesn't save you. And my colleague acknowledges that that exercise of discretion has to be reasonable. And it's hard to imagine how a complete forfeiture of all rights relating to the original bond and the original guarantee in a situation where the loss is less than the original bond and the approval was, in fact, given, could be reasonable. But I don't read your brief to be making that argument. I mean, we spent a lot of time with Mr. Austin on two arguments. One is, did SBA waive objection to the increase by agreeing to it ultimately? And two, should there be a forfeiture only of the additional obligation on the larger increment of the bond? But I didn't see you making either of those arguments in your brief. And you're right, Your Honor. And that's because this language wasn't in front of us at the time. And it didn't trigger this discussion that we devoted a great deal of time to, which is a reasonable discussion. Nevertheless, it was. But those legal arguments would have been available to you. You could have argued that the regulation should not be read to require forfeiture not only of the increment, but also of the underlying bond to which there was unequivocal approval. Or that SBA waived objection by ultimately agreeing. But I didn't think you made either of those arguments. We made the flip side argument, Your Honor, that if this is a condition subsequent that results from when it's invoked of a complete forfeiture of rights under the guarantee agreement, then the condition should be read very stringently against the party invoking the condition. And that the party, that is the SBA, and that the party should have a very high standard of establishing that the condition was, in fact, violated. And the condition should be read very narrowly. And that argument was expressed in the argument that it has to be a situation where the surety has acted to create unequivocally an increased liability under the bond prior to the approval. OK. Thank you, Your Honor. Thank you, Mr. Slago. And thank you, Mr. Austin, in case it's taken into consideration.